IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff-Respondent, ) | |
| ) | |
| vs. ) | Case No. 14 C 5768 |
| ) | |
| CORICHEY GRAYSON, ) | |
| ) | |
| Defendant-Movant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In February 2013, Corichey Grayson pled guilty, pursuant to a written plea agreement, to charges of possession of cocaine and marijuana with intent to distribute and possession of a firearm in furtherance of a federal drug trafficking crime. The Court imposed a prison sentence totaling 211 months. Grayson then appealed his sentence, but he later dropped his appeal.

Grayson has now filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, asserting that his trial counsel rendered ineffective assistance. For the following reasons, this Court denies Grayson's section 2255 motion without an evidentiary hearing.

### Background

A.     The events leading to the charges against Grayson

On November 13, 2011, Grayson double parked on South Yates Boulevard in Chicago around 10:00 p.m. Chicago Police Officers Thomas Derouin and Richard

Hanrahan approached Grayson's car to issue him a citation for his traffic offense. The officers said they saw Grayson make furtive hand movements as they approached the car. One officer also said he saw Grayson place a clear plastic bag between his legs on the driver's seat. The officers also said they smelled burning marijuana odor emanating from Grayson's car as they interacted with him through the driver's window.

Officers Derouin and Hanrahan arrested Grayson. They searched his vehicle and found thirty small clear knotted plastic bags, each containing a single rock of crack cocaine, and eight clear knotted plastic bags, each containing marijuana. In total, the officers found eighteen grams of crack cocaine. They also found a loaded handgun on Grayson's person.

During at least some of these events, Carrie Jordan, Grayson's mother, and Frederick Jordan, Jr., his cousin, were standing outside their home overlooking the incident, which took place on the street in front of the home.

## B. Court proceedings

Grayson was initially charged in the state court. He retained Nicholas Karas as his defense counsel. Karas prepared two pretrial motions asking the state court to suppress evidence obtained from Grayson's car on the ground that the search by the police violated the Fourth Amendment's prohibition against unreasonable searches and seizures.

On July 26, 2012, a federal grand jury indicted Grayson for possession of cocaine and marijuana with intent to distribute, possession of a firearm in furtherance of a federal drug trafficking crime, and possession of a firearm after being convicted of a felony. The state court case against Grayson was dropped, and Assistant Federal

Defender Imani Chiphe was appointed to represent Grayson before this Court.

On February 14, 2013, Grayson pled guilty to possession of cocaine and marijuana with intent to distribute and possession of a firearm in furtherance of a federal drug trafficking crime, pursuant to a written plea agreement. The felon in possession charge was later dismissed.

As indicated earlier, in July 2013, this Court sentenced Grayson to a prison term totaling 211 months. Grayson appealed his sentence, but he later dropped the appeal.

Grayson has now moved pursuant to 28 U.S.C. § 2255 to vacate his sentence. He contends that attorney Chiphe rendered ineffective assistance of counsel. The government filed a motion in which it argued that by his allegations, Grayson had waived the attorney-client and attorney work product privileges. The Court granted the government's motion, and the government later submitted an affidavit from Chiphe describing his work and his strategy.

**C.  Chiphe's attorney work product and trial strategy**

In his affidavit, Chiphe states that when he interviewed Grayson, Grayson admitted to double parking on South Yates Boulevard on the night of November 13, 2011. Gov't's Ex. B ¶ 8. Grayson also told Chiphe that he did, in fact, possess crack cocaine, marijuana, and a firearm in his car that night. *Id.* Grayson also advised Chiphe that he had, in fact, made movements in his car as the officers approached, because he "was trying to hide the drugs." *Id.*

According to Chiphe, Grayson identified Carrie Jordan and Frederick Jordan as potential witnesses for Chiphe to interview. *Id.* ¶¶ 13, 17. Chiphe says he spoke with both of them about Grayson's arrest and the circumstances surrounding the search of

his car. *Id.* ¶¶ 14, 18. Chiphe also reviewed Carrie Jordan's July 26, 2012 grand jury testimony and the report of Fredrick Jordan's interview by federal agents. *Id.* ¶¶ 15, 19. Chiphe says he concluded that the facts provided by the witnesses did not materially differ from those found in the interview report and grand jury testimony. *Id.*

Chiphe also reviewed the motions to suppress that Karas, Grayson's attorney in the state court case, had prepared. *Id.* ¶ 22. Chiphe concluded that the motions were "stock suppression motions filed in order to preserve the issue." *Id.* He further concluded that the motions "did not allege any new facts previously unknown to me or which would likely provided a basis for a meritorious motion to suppress." *Id.* Chiphe states that "nothing about the content of the motions persuaded me that a meritorious motion to suppress evidence could be made." *Id.*

Chiphe says that he also discussed his strategy with Grayson. *Id.* ¶¶ 10, 11. He advised Grayson that he was not going to file in the federal case the motions to suppress that Karas had filed in the state court case because he considered them frivolous in light of the government's evidence about the seizure and Grayson's own account, which was not significantly different from the accounts of the arresting officers. *Id.* ¶ 10. Chiphe says that he also advised Grayson that pursuing the motions to suppress evidence might be harmful to his defense. *Id.* ¶ 11. He told Grayson that he did not believe the Jordans could effectively rebut the officers' account and that as a result, the only way to proceed on a motion to suppress would be for Grayson himself to testify. Chiphe expressed his concerns about this. His first concern was that Grayson likely would have to admit his attempt to hide the gun and drugs as the officers approached the car. *Id.* Chiphe also informed Grayson about the possibility of an

4

obstruction of justice enhancement at sentencing if the judge found any of his testimony at a suppression hearing not to be credible. *Id.* Chiphe recommended Grayson instead pursue a plea resolution. He states that Grayson was "disappointed" but agreed to this strategy. *Id.*

**Discussion**

In his section 2255 motion, Grayson contends that Chiphe rendered constitutionally ineffective assistance of counsel in two respects. First, Grayson contends that Chiphe failed to investigate the circumstances surrounding the stop and search of Grayson's vehicle and his subsequent arrest by failing to interview key witnesses and consult with Karas, Grayson's state court attorney. Second, Grayson contends that Chiphe should have moved to suppress the evidence seized from him and the vehicle. Grayson asserts that such a motion would have been meritorious because the police did not have probable cause to search his vehicle.

A defendant is entitled to relief under section 2255 if "the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). A court must hold an evidentiary hearing on a section 2255 motion if the movant alleges facts that, if proven to be true, would entitle the defendant to relief. *Id.* A court may deny a section 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.*

Ineffective assistance of counsel is a Sixth Amendment violation that, if found,

5

entitles a defendant to relief under 2255. *See, e.g., Hurlow v. United States,* 726 F.3d 958, 964 (7th Cir. 2013). To establish a claim of ineffective assistance, the defendant must show both deficient performance on the part of counsel and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance exists when the movant shows that "counsel's representation fell below an objective standard of reasonableness…under prevailing professional norms." *Id.* at 688. When reviewing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Prejudice is found when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome." *Id.* at 694.

**A.     Failure to investigate**

Grayson contends that Chiphe failed to fully investigate the circumstances surrounding the search of his car and failed to fully interview the two witnesses Grayson had identified. An attorney renders deficient assistance if he fails to locate and interview witnesses who are likely to help the defense. *See Davis v. Lambert,* 388 F.3d 1052, 1064 (7th Cir. 2004) (finding deficient performance when counsel failed to interview a witness whose account differed materially from the prosecution's lead witness); *Hampton v. Leibach*, 346 F.3d 219, 253 (7th Cir. 2003) (finding deficient performance when counsel failed to contact several exculpatory witnesses whose names had been given to him); *Sullivan v. Fairman*, 819 F.2d 1382, 1391 (7th Cir. 1987) (finding deficient performance when counsel failed to locate and interview known

witnesses who could aid in petitioner's defense).

It is undisputed that Chiphe spoke with Carrie Jordan, though the nature and extent of their discussions is disputed. Chiphe says he had multiple conversations with Ms. Jordan both in person and over the phone, during which she informed him Grayson did in fact double park on the night in question. Gov't's Ex. B ¶ 14. Chiphe also states that Ms. Jordan was unable to describe Grayson's arrest or the search of his car, because when she came out of the house, Grayson had already been detained. Thus, according to Chiphe, Ms. Jordan was not in a position to support Grayson's contentions regarding the circumstances of the stop and search. Ms. Jordan, by contrast, has submitted an affidavit in which she says that although she talked to Chiphe several times, he never discussed with her what she observed on the night of the arrest. Def.'s Ex. A at 3.

The dispute about what Chiphe discussed with Ms. Jordan is immaterial based on the other evidence before the Court. First, in her affidavit submitted with the section 2255 motion, Ms. Jordan agrees that Grayson double parked. *Id.* at 1-2. Second, although Ms. Jordan's affidavit contradicts some of what the police officers said, she offers nothing to contradict the contention that the officers saw Grayson making furtive movements and smelled marijuana. Third, when interviewed by a federal prosecutor and agent, Ms. Jordan said that by the time she went outside her home, Grayson "had been arrested"—which supports the proposition that she did not observe the events that led to the search. Gov't's Ex. C at 1. Finally, it is undisputed that during her testimony under oath before the grand jury, which Chiphe reviewed, Ms. Jordan stated that she was too far away from the where the vehicle was being searched to hear what the

7

officers were saying to Grayson, and she indicated that she did not have a particularly good memory of the events. Gov't's Ex. D at 8-11.

Chiphe also says he contacted Frederick Jordan over the phone and determined that his account of the events did not materially differ from what the police report said. Gov't's Ex. B ¶ 18. Chiphe's account of this interview is uncontradicted in the record.

Because neither Ms. Jordan nor Mr. Jordan had evidence that was materially different from what the police had reported, there is no identifiable prejudice to Grayson from Chiphe's failure to interview them further. Specifically, there is no basis to conclude that the Jordans's accounts would have enabled Grayson to successfully move to suppress evidence. To put it another way, Grayson has not shown that but for Chiphe's failure to take further steps, "the result of the proceeding would be different." *Strickland,* 466 U.S. at 694.

The Court also notes that Grayson's own statements to Chiphe gave him a solid basis to conclude that further investigation regarding the filing of a motion to suppress would be unproductive. Chiphe's judgment that Grayson would have to testify to sustain a motion to suppress was correct because, based on the record, the Jordans's testimony would not have refuted the key elements of the officers' accounts. But the evidence is uncontradicted that Grayson told Chiphe he had illegally double parked on South Yates Boulevard the night of the evening in question; he had made movements to try and hide contraband substances as the police approached his car; and he had actually possessed marijuana in his car. Gov't's Ex. B ¶ 8. Thus Grayson's own account would not have supported suppression of the seized evidence. Indeed, his admission of double parking provided a legal basis for the officers to stop his car, and

8

his other admissions supported the officers' contentions that they had probable cause to search the car. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland*, 466 U.S. at 691.

Finally, Chiphe's decision to not consult Karas, Grayson's state court defense attorney, before deciding not to file a motion to suppress also did not constitute deficient performance. Unlike in *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986), where an attorney's failure to file a pre-trial motion was deficient performance because the failure stemmed from the attorney's choice to not do discovery, Chiphe reviewed Karas's motions to suppress evidence and found them non-meritorious based upon his own investigation. Gov't's Ex. B ¶ 22.

In short, it was reasonable for Chiphe to believe that the material facts supporting the search of Grayson's car were not in dispute and further inquiry likely would produce nothing of value. Additionally, the possibility of Grayson would have to admit, during a suppression hearing, his possession of contraband drugs and his attempt to hide the drugs from the police gave Chiphe reason to believe that further investigation into the motions to suppress evidence would be fruitless. For these reasons, Chiphe's decision to not further investigate those motions was not unreasonable and did not constitute deficient performance. *See Strickland*, 466 U.S. at 691 (effective legal assistance requires counsel to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.").

**B.    Failure to file motion to suppress evidence**

Grayson also contends that Chiphe rendered ineffective assistance by failing to move to suppress the evidence seized from his car.  When addressing an ineffective assistance claim of this type, the Court looks to the merits of the underlying motion that the defendant contends his attorney should have filed.  *See Kimmelman*, 477 U.S. at 375 (finding that a defendant must prove "that his Fourth Amendment claim is meritorious").  If the underlying claim lacked merit, counsel cannot have rendered ineffective assistance by failing to assert the claim.  *See Johnson v. Thurmer,* 624 F.3d 786, 793 (7th Cir. 2010) (dismissing an ineffective assistance of counsel claim because the underlying claim lacked merit); *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) (ineffective assistance claim based on failure to file motion to suppress cannot succeed unless defendant shows motion would have been meritorious).

A Fourth Amendment claim of the type at issue in this case is meritorious when the defendant can show that the search or seizure was made without probable cause.  *See, e.g., Rawlings v. Kentucky,* 448 U.S 98, 105 (1980).  In this case, Grayson's Fourth Amendment claim lacked merit, because the police had probable cause to stop and search his car based on the uncontradicted evidence.

Under *Atwater v. City of Lago Vista,* 532 U.S. 318, 354 (2001), "if an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Id.* at 354.  It is undisputed that Grayson double parked his car; there is no contrary evidence.  At the time of the incident, the Chicago Municipal Code provided that "it shall be unlawful to stand or park any vehicle . . . in a roadway other than parallel

10

with the edge of the roadway headed in the direction of lawful traffic movement and with the curbside wheels of the vehicle within 12 inches of the curb or edge of the roadway." Chicago, Ill., Mun. Code § 9-64-020(a).  Because the police observed Grayson double parking, they had probable cause to stop Grayson's vehicle and arrest him.  The Court also notes that Chicago has an ordinance that permits a police officer to arrest a person for violating the city's double parking ordinance.  *See id.* § 2-84-230(1) ("the members of the police department shall have power . . . [to] arrest or cause to be arrested, with or without process, all persons who break the peace or are found violating any municipal ordinance.").  The fact that Grayson was ultimately ticketed for obstruction of traffic rather than double parking is inconsequential.  *See Devenpeck v. Alford,* 543 U.S. 146, 153-54 (2004) (if there was probable cause to arrest for any offense, an arrest is lawful even if the arresting officer cites some other offense).

The police also had probable cause to search Grayson's car once they saw him make furtive hand movements and smelled a marijuana smell coming from within his car.  Under *Arizona v. Gant*, 556 U.S. 332 (2009), a warrantless search of a vehicle incident to an arrest is permitted "if there is probable cause to believe a vehicle contains evidence of criminal activity."  *Id.* at 347.  Circumstantial facts surrounding an arrest can help establish probable cause to search a vehicle by giving the officers a reasonable basis off which they can conclude a vehicle contains evidence of criminal activity.  In Grayson's case, the marijuana odor and the furtive hand gestures the officers observed provided them with a reasonable basis to believe that Grayson's car contained evidence of criminal activity.  The search was therefore appropriate.  *See United States v. Hayden,* 389 F. App'x 544, 549 (7th Cir. 2010) (smell of marijuana incident to a legal

arrest of person in a vehicle provided probable cause to search the vehicle); *United States v. Ingrao,* 897 F.2d 860, 864 (7th Cir. 1990) (furtive hand gestures can help establish probable cause, particularly when coupled with other evidence).

Because there is no evidence undercutting the proposition that the police had a proper basis to stop Grayson and search his vehicle, a motion to suppress based on a Fourth Amendment violation would have lacked merit. For this reason, Grayson cannot prevail on his claim of ineffective assistance claim based on Chiphe's failure to file a motion to suppress. *See generally Peterson v. Douma*, 751 F.3d 524, 533 (7th Cir. 2014) (counsel need not "press meritless arguments," and "it is always good strategy to avoid wasting time or the court's attention with claims that are going nowhere.").

### Conclusion

For the reasons stated above, the Court directs the Clerk to enter judgment stating that defendant's motion under 28 U.S.C. § 2255 is denied. The Court also declines to issue a certificate of appealability, because there is nothing to suggest that the merits of Grayson's claims are debatable, capable of different resolution, or deserving of further consideration. See 28 U.S.C. §2253(c)(2).

                                                      MATTHEW F. KENNELLY
                                                      United States District Judge

Date: August 6, 2015